Opinion
COLE, P. J
The issues raised in this consolidated appeal and habeas corpus proceeding involve the relationship between subdivisions (f) and (ff) of section 647 of the Penal Code (hereinafter referred to as subdivision (f) and subdivision (ff)). In colloquial language the former makes it a misdemeanor to be drunk in public in such a condition that one is unable to exercise care for his or her own safety or that of others.[1]
Subdivision (ff) provides an alternative to criminal prosecution or juvenile court proceedings for persons arrested for violating subdivision (f).[2]
*Supp. 28 In response to the issues raised in these proceedings we hold (1) that under current law, binding on us, we must reject an argument that it is cruel and unusual punishment to subject a chronic alcoholic who is not homeless to criminal prosecution (part III, infra); (2) that compliance with subdivision (ñ) is not an element of the offense of being drunk in public established by subdivision (f) (part IV, infra); (3) that in subdivision (f) prosecutions once the defendant raises the issue the People must establish their reasonable inability to comply with subdivision (ff) (part V, infra); and (4) that among the factors which the court may take into account in determining the People’s ability to comply with subdivision (ff) are limitations of space, time and money (part VI, infra).
I
Procedural Background
These proceedings involve an appeal from a conviction for violation of subdivision (f) and a request for relief on habeas corpus in connection with two other such convictions. In connection with the habeas corpus matter we appointed a referee to take testimony. The referee has reported that testimony to us together with findings of fact which we adopt.
II
Factual Background
Paris Ambellas is a chronic alcoholic. With respect to the arrest leading to the appealed from conviction the testimony of a Long Beach police officer was sufficient to establish Ambellas’ violation of subdivision (f) (aside from issues concerning the constitutionality of the subdivision and its interrelationship with subdivision (ff) which issues we discuss below). *Supp. 29 No evidence was received with respect to any efforts by the officer who arrested Ambellas to comply with subdivision (ii).
With respect to the convictions involved in the habeas corpus proceeding, the referee determined that Ambellas is not homeless in the sense that he did not have the funds to find a private place to live and do his drinking, if necessary. Ambellas’ drinking career is centered in Long Beach, California.
The kind of facility referred to in subdivision (fi) is a facility for the 72-hour treatment and evaluation of inebriates (Welf. & Inst. Code, § 5170), commonly referred to as a detoxification center. Only one such facility has been established in Los Angeles County. It is located in the “skid row” area of East 5th Street in the City of Los Angeles and has a capacity of only 20 beds. As to the two convictions involved in the habeas corpus proceeding, the referee found that it would not be reasonable for the Long Beach Police Department to transport Ambellas to this facility. The factors upon which he relied and others are discussed by us in part VI of this opinion.
III
Subdivision (F) Does Not Subject Appellant to Cruel and Unusual Punishment
Appellant argues that no volitional act is proscribed by subdivision (f), and that because he is a chronic alcoholic his arrest was the result of his inability to resist a compulsion to drink. Consequently, he argues that to punish him as a result of his status violates his Eighth Amendment right against cruel and unusual punishment. While the record on appeal would not sustain a finding that appellant was a chronic drunk the record of the habeas corpus proceeding does establish that information. Based on medical testimony the referee found that Ambellas was a chronic alcoholic. We see no reason why the fact that defendant is a chronic alcoholic should not be considered by us with respect to the offense involved in the appeal as well as the offenses involved in the writ proceeding, especially since in the six and one-half years between October 1970 and April 1977, which includes the offense involved in the appeal, appellant was arrested approximately 80 times for being under the influence of alcohol and was convicted or forfeited bail on most of those occasions.
*Supp. 30 The Eighth Amendment argument was made in In re Spinks (1967) 253 Cal.App.2d 748 [61 Cal.Rptr. 743]. Appellant attempts to distinguish Spinks on the ground that the defendant there had pleaded guilty. Nevertheless, Spinks was a habeas corpus proceeding and the question whether punishing a chronic alcoholic constituted cruel and unusual punishment was the square issue which the court was called upon to decide. We are, of course, aware that much evidence—not developed in this proceeding—can be mustered for the argument that chronic alcoholism is a disease and that criminal punishment therefor is entirely inappropriate. However, the alleged unconstitutionality of subdivision (f) as to a defendant who is not homeless was rejected in Spinks based on the same arguments raised here. We are bound by that decision. (Auto Equity Sales v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)[3]
IV
Proof of Compliance With Subdivision (FF) Is Not an Element of the Offense Proscribed by Subdivision (F)
Appellant argues in effect that the provisions of subdivision (ff) are part of subdivision (f). He urges “that a simple violation”[4] of subdivision (f) is not an offense unless it is first shown, under the language of subdivision (fi) that the officer was not reasonably able to transport the persons arrested to a detoxification facility.
As noted, subdivision (fi) requires a peace officer who is reasonably able to do so to place a subdivision (f) arrestee in “civil protective custody” in a detoxification center. When that has occurred the arrestee is not subject to criminal prosecution. The program of civil protective custody for inebriates is experimental. (People v. Superior Court (Colon) (1972) 29 Cal.App.3d 397, 400-401 [105 Cal.Rptr. 695]; Johnson v. Municipal Court (1977) 70 Cal.App.3d 761, 763 [139 Cal.Rptr. 152].) It is an attempt “to deal with the problem of inebriates by permitting any county which wishes to participate in the program an opportunity to deal *Supp. 31 with such people as ‘sick’ rather than as criminals.” (People v. Superior Court (Colon), supra, at p. 400.) In accord with its experimental nature the legislative intent was to encourage establishment of detoxification facilities and to avoid the discouragement of county participation which might result if there was a blind insistance upon a minimum bed capacity beyond the funding capability of the county. (Johnson v. Municipal Court, supra, p. 764.)
With this brief background we turn to a discussion of the contention of Ambellas and of amici that a “simple violation” of subdivision (f) does not constitute an offense unless the arresting officer is not reasonably able to transport the accused to the designated facility. Appellant approaches the problem by stressing the mandatory language of subdivision (ff). Amici build on this theme by asserting that a showing that the officer was not reasonably able to place a subdivision (f) arrestee in a detoxification facility is an element of the crime set forth in subdivision (f).
We reject the argument that subdivision (ff) is part of the offense described in subdivision (f). In the first place the plain language of subdivision (ff) precludes such an interpretation. The opening phrase of the section is, “ When a person has violated subdivision (f) of this section, a peace officer, if he is reasonably able to do so, shall place the person, or cause him to be placed, in civil protective custody.” (Italics added.) By that very language, subdivision (ff) cannot even start to come into play until a person “has violated” subdivision (f). In the second place case law is against this contention. In People v. Superior Court (Colon), supra, 29 Cal.App.3d 397, the court stated that subdivision (f) and subdivision (ff) “are not in conflict, rather they offer alternatives” (id., at p. 401). The court also said “Section 647, subdivision (ff) is clearly severable from and creates an exception to section 647, subdivision (f),. . .” (Id., at p. 402.)
V
Once the Defendant Raises the Issue in a Subdivision (F) Prosecution the People Must Prove Their Reasonable Inability to Comply With Subdivision (FF)
In support of the argument that subdivision (ff) is an element of the subdivision (f) offense, appellant and amici remind us of the use of the word “shall” in subdivision (ff). While we have held for the reasons stated *Supp. 32 above that subdivision (fí) is not part of the drunk in public offense proscribed by subdivision (f), we still must consider the effect of a failure of the People to place an arrestee in a detoxification center in light of that seemingly mandatory language and the benign purposes of the statute. By its language, subdivision (fi) creates a defense to subdivision (f) prosecutions. When a defendant is on trial for a subdivision (f) violation and suggests that subdivision (fi) has not been obeyed the People should be required to proceed to produce evidence of the reason for their noncompliance. The ultimate burden of proof should remain on the defendant, but he is not required affirmatively to produce evidence himself, although he may do so.
Subdivision (fi) categorically states that when a person has violated subdivision (f) “a peace officer, if he is reasonably able to do so, shall place the person, or cause him to be placed in civil custody. Such person shall be taken to a facility. . . .” (Italics ours.)
The California Supreme Court has recently discussed at length the effect of the use of apparently mandatory language in a statute. Focusing on the effect that a failure to perform an obligatory procedure has on invalidating the governmental action to which the procedural requirement relates (People v. McGee (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382]), the court has concluded that when the object of the directed act is'to subserve some public purpose and the statute is not express as to the result which follows when the act is not performed, the result is to be determined by that conclusion which will best accomplish the purpose of the statute. (See People v. McGee, supra, at p. 962, citing Morris v. County of Marin (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606].)
When compliance is had with subdivision (fi), the result is that the subdivision (f) violator is completely free of the criminal process.[5] This result obviously comports with the purpose of the statute to provide medical instead of penal treatment for one drunk in public. Accordingly, to carry out the legislative purpose, the “shall” language of subdivision (fi) statute must be accorded a mandatory effect and the People’s failure to follow the proscribed procedure constitutes a basis for challenging the subsequent criminal prosecution. (People v. McGee, supra, at p. 961.)
*Supp. 33 The Legislature unfortunately has not spelled out the procedural details to be applied in a subdivision (f) trial as to how the issue of noncompliance with the statute is to be raised, and who bears the burden of proof. We believe that requiring the defendant initially to raise the issue and to bear the ultimate burden, but placing on the People the requirement of proceeding with evidence on the subject, once the defendant raises the issue, will accomplish the statutory purpose.
Concerning defenses “which raise no challenge to the sufficiency of the prosecution’s proof of any element of the crime charged but for reasons of public policy insulate the accused notwithstanding the question of his guilt” (People v. Tewksbury (1976) 15 Cal.3d 953, 964 [127 Cal.Rptr. 135, 544 P.2d 1335]), the burden of proving the defense may be placed on the defendant. (Id., at pp. 963-965.) In the present instance it is evident that when a defendant is placed on trial for a subdivision (f) violation he has not been accorded the benefits of subdivision (fi); if he had received those benefits there would not have been a criminal prosecution. Trial may have resulted, however, either because the officer was not reasonably able to place the particular defendant into a detoxification facility, or because the officer while reasonably able so to do had not complied with the provisions of the statute.[6]
In these circumstances, the defendant who contends that the statute has not been complied with should at least be required to call the court’s attention to that defense and to bear the ultimate burden of persuasion on the defensive issue of the officer’s reasonable ability to put him or her in a detoxification facility.
This is so because the defense does not challenge any element of the People’s case under subdivision (f), but instead exists on account of reasons of public policy (People v. Tewksbury, supra, 15 Cal.3d at p. 954) and because, ordinarily, the burden of proving every element of a defense is on the one who asserts it. (Evid. Code, § 500.)
Also, ordinarily, “(a) The burden of producing evidence as to a particular fact is on the party against whom a finding on that fact would be required in the absence of further evidence.
*Supp. 34 “(b) The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact.” (Evid. Code, § 550.)
This rule is not absolute, however.
“[F]or practical reasons the burden of explanation or of going forward with the evidence is sometimes placed on a party-opponent who has information lacking to the one who asserts and seeks to establish a fact.” (Garcia v. Industrial Accident Com. (1953) 41 Cal.2d 689, 694 [263 P.2d 8]; People v. Halopoff (1976) 60 Cal.App.3d Supp. 1, 5-7 [131 Cal.Rptr. 531].) Here, the Legislature has chosen to make the applicability, vel non, of subdivision (ft) dependent upon the officer’s reasonable ability to comply with it. The very statement of that test suggests that it involves considerations peculiarly within the knowledge of the People who are seeking to convict defendant of the subdivision (f) violation. Why were they, in the person of the officer involved, not reasonably able to comply with subdivision (ff)?
Accordingly, we hold that when a defendant suggests that the People’s failure to comply with subdivision (fí) should result in his acquittal, the burden shifts to the People to produce evidence of the reasons for the failure. Once that evidence has been presented the defendant is, of course, free to present other relevant evidence of his own on the issue. And, since the defense is one allowed for reasons extraneous to the guilt or innocence of the defendant (People v. Tewksbury, supra) the ultimate burden remains on the defendant to persuade the trier of fact by a preponderance of the evidence that the defense is well taken.
VI
Factors Which May Be Considered in Determining Officer’s Reasonable Ability to Comply With Subdivision (FF)
In Johnson v. Municipal Court, supra, 70 Cal.App.3d 761, it appeared that Alameda County had established a detoxification facility of limited capacity which not infrequently was unable to accommodate all of the persons referred to it. The petitioners in Johnson, each arrested for a subdivision (f) violation, were taken to the police station where an officer telephoned the facility and was told that there was no vacant bed available. Each was then booked and arraigned as a misdemeanant for violating subdivision (f). The Johnson writ proceeding followed, wherein *Supp. 35 it was complained that petitioners had been denied the equal protection of the law.
It was held in People v. McNaught, supra, 31 Cal.App.3d 599 and in People v. Superior Court (Colon), supra, 29 Cal.App.3d 397, that equal protection is not denied to inebriates prosecuted under section 647, subdivision (f) in a county which has not established a facility at all simply because another county has established such a facility. Johnson presented the equal protection issue on an intra county basis. The question was whether the petitioner’s constitutional rights were violated because the facility which had been established in Alameda County was not physically large enough to accommodate them, causing them to be prosecuted on a criminal basis while other Alameda County arrestees received the benefits of subdivision (fi). The court held that despite this intracounty disparity of treatment, equal protection concepts were not violated. The court reiterated the experimental nature of the subdivision (if) program to deal with the problem of alcoholism and stated: “Doubts as to efficacy of the experimental alternative can be resolved only by trying it. We find no denial of equal protection in such an experiment. The state is not required ‘to strike at all evils at the same time’ (Semler v. Dental Examiners, 294 U.S. 608, 610 [79 L.Ed. 1086, 1089, 55 S.Ct. 570]). A legislature may ‘take reform “one step at a time” ’ (McDonald v. Board of Election, 394 U.S. 802, 809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]). The equal protection guaranty is not violated ‘whenever officials “prosecute one and not [another] for the same act” [citations] . . .’ but ‘simply prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis.’ (Murgia v. Municipal Court, 15 Cal.3d 286, 297 [124 Cal.Rptr. 204, 540 P.2d 44].)
“Here, there is no singling out or discrimination. Each violator of section 647, subdivision (f) is sent to the civil facility if space for him is available. Only those whose offense occurs when no space is available are subject to court processing as misdemeanants. Petitioners in no way suggest the exercise of any choice by police or prosecutors as to the place of confinement. Whether the experiment succeeds, and warrants application in all counties or to all inebriates, is a matter for legislative judgment. We are disinclined to risk premature termination of the experiment by a judicial broadening of its scope at a cost we neither know nor are able to estimate.” (70 Cal.App.3d at p. 765.)
*Supp. 36 Before reaching this conclusion, the court stated in dictum “It is somewhat difficult to conceive of circumstances other than lack of space which would affect the reasonable ability of the officer to place an inebriate in the facility. The provision for county fixing of a maximum capacity indicates that capacity is the major element affecting such ability.” (70 Cal.App.3d at p. 764.) We believe that many other circumstances may have an effect on the officer’s reasonable ability to comply with the statute and that this record discloses some of them.
In the instant habeas corpus proceeding, the referee based his finding that it was not reasonable for the Long Beach officers to transport Ambellas to the East Fifth Street detoxification center in Los Angeles on the following circumstances:
“a. The Long Beach police officers who were involved in the arrest, which the writ addresses itself to, were not aware of any facility complying with the § 5170 of the Welfare and Institutions Code located at 541 East 5th Street in the City of Los Angeles.
“b. There is no policy established by the Long Beach Police Department in regard to transportation of 647f arrestees to the facility at 541 East 5th Street in the City of Los Angeles.
“c. Both officers testified that in order to leave the city of Long Beach, with the exception of going to the Norwalk State Hospital, or in hot pursuit of a suspected criminal, they would be forced to get the permission of their supervisor. Neither officer thought such permission in 647f arrest cases would be forthcoming.
“d. There is a so-called detoxification center in the city of Long Beach where the Long Beach police officers take a 647f arrestee, if the center will accept the arrestee, and if the arrestee is not likely to be the type of person they cannot handle because of his attitude at the timeJ[7]! Although neither officer in the cases concerned in the writ considered the Los Angeles facility, both officers stated that they did not take Mr. Ambellas to the Long Beach facility because he would have been troublesome.
“e. The following is a breakdown of the number of police cars on patrol in the city of Long Beach during the different watches:
*Supp. 37 “1) Patrol Watch No. 1 from 10:30 p.m. to 8:15 a.m. There are about 24 Long Beach police vehicles assigned to patrolling the streets of Long Beach.
“2) Patrol Watch No. 2 from 7:30 a.m. to 5:30 p.m. About 35 Long Beach police vehicles are assigned to this patrol.
“3) Patrol Watch No. 3 from 4:30 p.m. to 2:30 a.m. About 35 Long Beach police vehicles are assigned to this patrol.
“f. The frequency of Penal Code § 647f arrests in the city of Long Beach by Long Beach police officers is variable, but generally averages between 90 to 110 arrests per week.
“g. Since August 28, 1975, applicant Paris Louis Ambellas has forfeited $950 in bail for Penal Code 647f offenses.
“h. On November 19, 1976, applicant Paris Louis Ambellas deposited $500 in bail on a appeal bond, which was subsequently exonerated and not yet returned.”
Note: “g” and “h” are findings of fact which are made at the request of defense attorney pursuant to a stipulation of the city prosecutor.
“i. Between October 1, 1970 and April 8, 1977, Paris Louis Ambellas has been arrested 79 times for violation of 647f of the Penal Code.
“j. The nearest facility to Long Beach which complies with § 5170 of the Welfare and Institutions Code is, according to stipulation, 23 to 25 miles away at 541 East 5th Street in Los Angeles.”
 The referee then said: “The Court has concluded, in view of all of the above, that it was unreasonable to expect the Long Beach Police Department to transport Ambellas to the facility mentioned on these two occasions because it would be unreasonable to expect the Long Beach Police Department to deprive itself of one police car, and at least one officer, probably two, for a period of 45 minutes to an hour each time an arrest for 647f is made, which according to the findings above would be 90 to 110 times a week.
“Whether a detoxification center complying with § 5170 of the Welfare & Institutions Code should be set up in Long Beach or not is a question *Supp. 38 that this Court need not address itself to. However, it seems that since the nearest facility is 23 to 25 miles away, it was unreasonable to transport Mr. Ambellas, and it would be unreasonable to expect the Long Beach Police Department to transport every 647f arrestee who qualifies for the facility in Los Angeles. . . .”[8]
In People v. McNaught, supra, 31 Cal.App.3d 599, the court enumerated a number of factors which a county might take into account in determining whether to establish and maintain a detoxification center.[9] We see no reason why at least some of the factors suggested in McN aught do not also bear directly on the ability of the officer to comply with subdivision (fi) by transporting a patient to a facility which has been established in a county. Obviously, when a county decides to open a facility it must determine how much to spend on the program. It may legitimately take into account the experimental nature of the program. Its conclusion, as in Los Angeles, may be to start small and expand the operation if it proves its worth. Clearly the East 5th Street facility is woefully inadequate if approached from the viewpoint of accommodating every subdivision (f) arrestee in the county. The facility has 20 beds. *Supp. 39 Appellant states in his opening brief that in 1975 there were 80,240 arrests for subdivision (f) violations in Los Angeles County.[10]
It may well be that elimination of “simple” 647, subdivision (f) violations from the criminal system and the substitution therefor of detoxification facilities able to accommodate all arrestees would be more effective, more humane and less costly than the present outmoded criminal procedures. That, however, is a subject for attention of the board of supervisors in its capacity as the legislative and executive body of county government. The judiciary should not mandate an end to otherwise constitutional criminal procedures because there may be something better which the executive and legislative branches of government have not seen fit to provide.
Were we to hold that Ambellas and other persons arrested in Long Beach (or Pomona or Lancaster or Malibu or any other outlying area of this far-flung county) must be considered for subdivision (fl) treatment without regard to factors of time, distance and manpower available to transport such a person to the detoxification facility, we would in effect put an end to the subdivision (fl) program in this county. “It might be tragic if section 647, subdivision (fl), had the effect contended for by defendant. While a decision in his favor would not invalidate the section, the result would necessarily be that simple section 647, subdivision (f), arrestees in [areas other than the vicinity of East Fifth Street] must be released. It is anybody’s guess how the Legislature would react to such a holding. The possibility that the net result would simply be a repeal of section 647, subdivision (fl), cannot be overlooked.” (People v. McNaught, supra, 31 Cal.App.3d at p. 609.)
We decline to be so unrealistic. There is much to be said for the value of the experimental program. The widespread nature of the evil of alcoholism should be attacked on all possible fronts. The detoxification *Supp. 40 facility is one of them. Thus the referee’s findings concerning the number of available Long Beach police officers and vehicles, the number of Long Beach arrests of violators of subdivision (f) and the time and distance involved in travelling to the only available facility all play a legitimate role in deciding whether the arresting officer was reasonably able to comply with subdivision (ff).
Concededly, this conclusion has practical difficulties since the result may well be that Long Beach arrestees, for example, will never be taken to the present subdivision (ff) detoxification facility if a court determines that it was factually reasonable under the circumstances of the particular case not to devote the manpower and expense to the transportation required. That result, however, is a by-product of the experimental nature of the program. Presumably, a proper allocation of resources will be made by the appropriate governmental bodies when and if the program proves itself of such value that it should be substituted completely for criminal procedures.
VII
Conclusion and Disposition
To sum up, we have held that under In re Spinks, supra, 253 Cal.App.2d 748, subdivision (f) is constitutional as applied to a chronic alcoholic who is not homeless; the offense proscribed by that subdivision is complete without reference to subdivision (ff); if a defendant suggests in a subdivision (f) prosecution that the People should have placed him or her in civil protective custody, the People have the burden of going forward with evidence on that subject, the ultimate burden of proof remaining with defendant; and finally, that included in the factors which relate to a reasonable ability to place a defendant in a detoxification center are considerations relating to the number of beds available, the location of the center, the time and cost involved in transporting an arrestee to a center and the manpower available for the task.
We must apply these conclusions to the convictions involved in the habeas corpus and appeal proceedings now before us. With respect to the two arrests and convictions involved in the habeas corpus proceedings, we do not, ourselves, need to determine in this case whether the factors enumerated by the referee which we have approved should excuse compliance with subdivision (ff). This is so because evidence of Arabellas’ “troublesome” character adduced in that proceeding, with respect to *Supp. 41 those arrests, shows that his violation on those occasions was not of the “simple” kind. In other words, there is factual support for a conclusion that he would be “unreasonably difficult for medical personnel to control.”
No such evidence appears with respect to the arrest and conviction involved in the appeal. In their petition for rehearing, the People suggest that the subdivision (fi) issue ought to be the subject of a pretrial motion addressed to the court rather than an issue to be presented to the jury on the trial of the matter. The People also suggest that with respect to the disposition of this particular case, the proper remedy wi 1 be to allow them to present evidence to the trial court on remand as to the reasonable inability of the officer to comply with subdivision (fi).
For both of these suggestions the People rely largely on Murgia v. Municipal Court (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44] and on People v. McGee, supra, 19 Cal.3d 948. Murgia involved the issue of discriminatory enforcement of the law. The court held that the question should be raised by pretrial motion to dismiss and should be decided by the court, not by a jury (15 Cal.3d at fn. 4, pp. 293-294). The reason for the decision in Murgia was two-fold: first, the court said the issue did not relate to the guilt or innocence of the accused but rather addressed itself to a constitutional defect in the institution of the prosecution. Second, the court said that because a claim of discriminatory prosecution generally rests upon evidence “completely extraneous to the specific facts of the charged offense,” the issue should not be raised at trial but should be submitted by pretrial motion. The court concluded that in light of the constitutional nature of the issue, the trial court, as opposed to a jury, had authority to entertain the claim.
It is at once apparent that the question of the officer’s reasonable ability to comply with subdivision (fi) is unlike Murgia in that no constitutional issue is involved. Further, the subdivision (fi) question is not entirely divorced from the guilt or innocence of the accused because the subdivision comes into effect only “[W]hen a person has violated subdivision (f).” Still further, while evidence of the officer’s reasonable ability to comply with subdivision (fi) is somewhat extraneous to the specific facts of the charged offense, it is not “completely'’ so as the Murgia court said was generally the case with discriminatory enforcement. It will be remembered that subdivision (fi) exempts from its application three classes of persons (see fn. 2, ante) and the applicability of those exemptions may depend in part on specific facts occurring in *Supp. 42 connection with the charged offense. Murgia is therefore not apt authority for the People’s contentions.
People v. McGee, supra, 19 Cal.3d 948, held that in a welfare fraud prosecution under Welfare and Institutions Code section 11483, the state was required to seek restitution before instituting criminal proceedings. Citing its Murgia decision, the court held that the issue of whether the state had sought restitution was not for the jury but was a procedural defense properly resolved by the trial court prior to trial. (19 Cal.3d at p. 967.) The court considered the McGee problem to be “comparable” to Murgia, stating that the question of whether or not the state had sought restitution did not relate to the guilt or innocence of the accused but to the question of a statutory defect in the institution of the prosecution (19 Cal.3d at p. 967).
McGee is like the present case in that no constitutional issue is involved in the point under discussion. It is somewhat like the present case in that if it is established that the officer did have a reasonable ability to comply with subdivision (ff), the subdivision (f) prosecution should not have been brought. But, as noted, the question does not arise until a person “has violated” subdivision (f) and the fact of violation cannot be established until after trial. Therefore, it is not possible to invoke the subdivision (ff) defense by way of pretrial motion. Further, the subdivision (f) case may, as in Arabellas’ case, have been tried to a jury. One of the reasons for not applying subdivision (ff) benefits to a defendant may be that he or she falls within one of the three categories of persons excluded from the statute. Whether this is so may be a factual question based on the officer’s testimony concerning the arrestee’s conduct at the time of arrest—for example was the person one who the officer in good faith believed would be unreasonably difficult for medical personnel to control? Accordingly, McGee does not furnish us with apt analogy.
The People argue that they had no chance to present testimony concerning factors such as those discussed in part VI of this opinion, because they did not know they would be required to do so. They ask that instead of reversing Arabellas’ conviction, we send the matter back to the trial court with directions to hear the evidence. We do not do so. The conviction was based on jury verdict, and the jury should resolve the facts involved. By so holding, we give Arabellas the benefit of the rules established in this case which his incentive has brought about. (Stovall v. Denno (1967) 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1205-1206, 87 S.Ct. 1967].) While this result is not compelled, neither is it prohibited. *Supp. 43 Further, our reversal will not preclude the People from retrying the action if they are so minded, and given the nature of the case an inordinately lengthy trial is not required.
The judgment of conviction in Crim. A. No. 14998 is reversed. The petition for habeas corpus is discharged.
Pacht, J., and Ibáñez, J., concurred.
A petition for a rehearing was denied on September 19, 1978 and the opinion was modified to read as printed above.

Subdivision (f) provides that one is guilty of disorderly conduct, a misdemeanor “(f) Who is found in any public place under the influence of intoxicating liquor, or any drug, or the influence of toluene or any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or under the influence of any combination of any intoxicating liquor, drug, toluetie or any such poison, in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of intoxicating liquor, or any drug, or the influence of toluene or any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or under the influence of any combination of any intoxicating liquor, drug, toluene or any such poison, interferes with or obstructs or prevents the free use of any street, sidewalk or other public way.”

“(fl) When a person has violated subdivision (f) of this section, a peace officer, if he is reasonably able to do so, shall place the person, or cause him to be placed, in civil *Supp. 28 protective custody. Such person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates. A peace officer may place a person in civil protective custody with that kind and degree of force which would be lawful were he effecting an arrest for a misdemeanor without a warrant. No person who has been placed in civil protective custody shall thereafter be subject to any criminal prosecution or juvenile court proceeding based on the facts giving rise to such placement. This subdivision shall not apply to the following persons: (1) Any person who is under the influence of any drug, or under the combined influence of intoxicating liquor and any drug. (2) Any person who a peace officer has probable cause to believe has committed any felony, or who has committed any misdemeanor in addition to subdivision (f) of this section. (3) Any person who a peace officer in good faith believes will attempt escape or will be unreasonably difficult for medical personnel to control.”

Appellant also contends in connection with his appeal that evidentiary error occurred. If there was any error in admitting the testimony of the officer it was in our view cured by the court’s admonition to the jury. We are satisfied that the error was not prejudicial.

In People v. McNaught (1973) 31 Cal.App.3d 599, 602 [107 Cal.Rptr. 566] the court used the term “simple violation” to refer to violations which do not involve any of the three numbered exceptions to subdivision (ff) (fn. 2, ante). We use the phrase in the same sense.

See also Penal Code section 849, subdivision (b)(2): “Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:. ... (2) The person arrested was arrested for intoxication only, and no further proceedings are desirable.”

If the offense involves more than a “simple violation” (see fns. 2 and 4, ante) a trial might also result. If a defendant in such a trial suggests subdivision (ff) as a defense, the People should readily be able to establish, through the testimony of the officer, why the defendant fell within one of the three categories of persons not entitled to subdivision (ff) benefits.

This facility has not been established pursuant to Welfare and Institutions Code section 5170 and is therefore not a facility contemplated by subdivision (if).

We reject the first of the above reasons. The fact that the Long Beach officers in question did not know the facility existed is simply no excuse. They should have known and if they did not, their superiors in the police department certainly are chargeable with knowledge, particularly because, as we have discussed, subdivision (fi) places a mandatory duty upon arresting officers.
We likewise reject items (b) and (c). The police department should have a policy with respect to these matters. We also reject the reasons lettered (g), (h) and (i) above. They do no more than help establish that Ambellas is the very sort of chronic alcoholic who ought to be treated in a detoxification center if one is available.

“1. Geographic Factors: (Size of county in area and population; population distribution by towns versus country; number of locations needed).
“2. Demographic Factors: (Stability of size of population; median age, etc.).
“3. Socioeconomic Factors: (Median income; drinking habits (public vs. private); incidence of unemployment and other stress-producing conditions: problems peculiar to particular ethnic minorities).
“4. Financial Factors: (Impact of problem drinking on county facilities (hospitals, law enforcement, courts, jail, welfare agencies)).
“5. Law Enforcement Factors: (Specific impact problem drinking on as a causative or related factor; types of crimes (violent or victimless); projections for future.)
“6. Health Factors: (Specific impact of problem drinking or physical health problems as a causative or related factor; projections for future).
“7. Existing Public and Private Services for Problem Drinkers: (Hospitals, clinics, A.A.).
“8. Results of Present Handling of Problem of Inebriation in Criminal Context: (Police efficiency and humaneness; sentencing habits of local judiciary; recidivism, etc.).
“9. Projected Results from Detoxification Center: (Expert opinions, interpretation of data from similar
“10. Availability of Resources to Establish and Operate: (A. Cost, staffing, community support. B. Backup services. C. Follow-up services).” (31 Cal.App.3d at p. 607, fn. 10.)

We judicially note that in Sundance v. Municipal Court, No. CA000257, a case called to our attention by amici curiae, another department of this court has pointed out, following an extensive trial dealing with criminal law enforcement of subdivision (f) that in the central area of the Los Angeles Police Department, where the East Fifth Street facility is located, there were in 1975 and 1976, respectively, approximately 33,000 arraignments. Given the proximity of the small detoxification center to Los Angeles’ skid row area, the court noted that the police department’s practice was that the detoxification facility notified the local watch commander when there was an empty bed. At that point local Los Angeles Police Department officers charged with enforcing subdivision (f) on skid row would first proceed to the detoxification center before transporting the prisoners to jail. The result is that the center is kept filled mainly by persons arrested in its immediate vicinity.