Filed 4/6/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JORGE D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JORGE D.,<br><br>    Defendant and Appellant. | G051403<br><br>(Super. Ct. No. DL043057)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Reversed.

Forest M. Wilkerson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Christopher P. Beesley, and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

Jorge D. appeals from the dispositional order declaring him a ward of the court (Welf. & Inst. Code, § 602), after the juvenile court found true the allegations he was publicly intoxicated and was a minor in possession of tobacco. Jorge argues the following: (1) there was insufficient evidence he was publicly intoxicated and the detaining officer did not comply with Penal Code section 647, subdivision (g) (all further statutory references are to the Pen. Code, unless otherwise indicated); and (2) there was insufficient evidence he was a minor in possession of tobacco because a lighter is not punishable under section 308, subdivision (b). We agree with Jorge that the detaining officer did not comply with section 647, subdivision (g), and that possession of a lighter is not punishable under section 308, subdivision (b). Therefore, we reverse the order.

FACTS

A petition alleged 17-year-old Jorge committed public intoxication, a misdemeanor (§ 647, subd. (f)-count 1), and minor in possession of tobacco, an infraction (§ 308, subd. (b)-count 2). At the contested jurisdictional hearing, Officer Robert Perez, an officer with nearly 10 years of experience, testified concerning his encounter with Jorge. Perez was on patrol one evening about 8:30 p.m., when he received a call regarding suspicious individuals around 1602 West Saint Andrew's Place. When he arrived, Perez saw one person sitting inside a car and three people standing in a group. Perez approached Jorge who was part of the group. Based on his training and experience, Perez observed physical signs Jorge was intoxicated. He noticed Jorge could not speak clearly and his speech was "mumbled, argumentative, and somewhat incoherent." In addition, Jorge had "bloodshot, watery eyes." Jorge was not related to any of the adults present. Perez concluded Jorge was intoxicated. Because Perez believed Jorge posed a danger to himself and was unable to safely walk home alone, Perez arrested Jorge. In searching Jorge during the arrest, Perez found a purple, Bic brand lighter.

On cross-examination, Perez testified he drove Jorge home and dropped him off with his mother. Perez admitted he did not place him in civil protective custody

2

for 72 hours and was not aware of a statute that required him to do so. On redirect examination, Perez testified that if a minor commits a felony he transports the minor to the police station for processing, but if the minor commits a misdemeanor, he will issue the minor a citation and either release the minor or drive the minor home if he feels it is unsafe for the minor to walk home.

After the prosecution rested, Jorge moved to dismiss count 1 pursuant to Welfare and Institutions Code section 701.1. Counsel argued there was insufficient evidence Jorge was publicly intoxicated and Perez failed to place Jorge in civil protective custody as required by section 647, subdivision (g). The juvenile court recessed to review *People v. Ambellas* (1978) 85 Cal.App.3d Supp. 24 (*Ambellas*).[1] When back on the record, the court commented "there wasn't a whole lot of evidence" but viewed cumulatively there was sufficient evidence Jorge was publicly intoxicated. Additionally, the court opined section 647, subdivision (g), was not a bar to delinquency proceedings. The court denied Jorge's motion to dismiss count 1.

Jorge's mother testified she had previously seen him under the influence of alcohol and he did not appear to be intoxicated when Perez dropped him off at home.

The juvenile court found counts 1 and 2 to be true beyond a reasonable doubt. At the dispositional hearing, the juvenile court declared Jorge a ward of the court and stated the maximum term of confinement was six months. The court placed him on probation with various terms and conditions and ordered him to complete 40 hours of community service.

---

[1] In *People v. Kellogg* (2004) 119 Cal.App.4th 593, 596, 604 (*Kellogg*), the court rejected defendant's contention section 647 punishes the condition of being a homeless, chronic alcoholic in violation of the Eighth Amendment. In doing so, the *Kellogg* court briefly discussed *Ambellas, supra,* 85 Cal.App.3d Supp. 24, and its alternatives to penal sanctions. (*Kellogg, supra,* 119 Cal.App.4th at pp. 605-606.)

3

DISCUSSION

*I. Section 647*

Jorge argues there was insufficient evidence Perez complied with section 647, subdivision (g), and that he was unable to care for himself. Because we agree with the former, we need not address the latter.

Section 647, subdivision (f), makes it a misdemeanor to be intoxicated in public. Section 647, subdivision (g), states the following: "When a person has violated [section 647,] subdivision (f), a peace officer, if he or she is reasonably able to do so, *shall* place the person, or cause him or her to be placed, in civil protective custody. The person shall be taken to a facility, designated pursuant to [s]ection 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates. A peace officer may place a person in civil protective custody with that kind and degree of force which would be lawful were he or she effecting an arrest for a misdemeanor without a warrant. A person who has been placed in civil protective custody shall not thereafter be subject to any criminal prosecution *or juvenile court proceeding* based on the facts giving rise to this placement." (Italics added.)

Section 647, subdivision (g), provides the subdivision does not apply to the following: "(1) Any person who is under the influence of any drug, or under the combined influence of intoxicating liquor and any drug. [¶] (2) Any person who a peace officer has probable cause to believe has committed any felony, or who has committed any misdemeanor in addition to [section 647,] subdivision (f). [¶] (3) Any person who a peace officer in good faith believes will attempt escape or will be unreasonably difficult for medical personnel to control."

There is not much published case law interpreting section 647, subdivision (g). In *Ambellas, supra,* 85 Cal.App.3d Supp. at page 27, the court addressed the relationship between section 647, subdivision (f), and section 647, subdivision (ff), which was later amended to be section 647, subdivision (g), without substantive change

4

and which we will hereafter refer to as subdivision (g) (Stats. 1998, ch. 758, § 1, p. 4968). The court described subdivision (g), as "an alternative to criminal prosecution or juvenile court proceedings for persons arrested for violating subdivision (f)." (*Ambellas, supra,* 85 Cal.App.3d Supp. at p. 27, fn. omitted.) The court explained subdivision (g), "requires a peace officer who is reasonably able to do so to place a subdivision (f) arrestee in 'civil protective custody' in a detoxification center[]" and that person is not subject to criminal prosecution or juvenile court proceedings. (*Ambellas, supra,* 85 Cal.App.3d Supp. at p. 30.) The *Ambellas* court first concluded subdivision (g), was not an element of the offense of subdivision (f). (*Ambellas, supra,* 85 Cal.App.3d Supp. at pp. 30-31.) Relying on the use of the word "shall," the court opined subdivision (g), was a defense and "the [prosecution's] failure to follow the proscribed procedure constitutes a basis for challenging the subsequent criminal prosecution. [Citation.]" (*Ambellas, supra,* 85 Cal.App.3d Supp. at p. 32.)

The *Ambellas* court turned to the procedural details of the defense and placed the onus on defendant to initially raise subdivision (g), as a defense and stated as follows: "[W]e hold that when a defendant suggests that the [prosecution]'s failure to comply with subdivision ([g]) should result in his acquittal, the burden shifts to the [prosecution] to produce evidence of the reasons for the failure. Once that evidence has been presented the defendant is, of course, free to present other relevant evidence of his own on the issue. And, since the defense is one allowed for reasons extraneous to the guilt or innocence of the defendant [citation] the ultimate burden remains on the defendant to persuade the trier of fact by a preponderance of the evidence that the defense is well taken." (*Ambellas, supra,* 85 Cal.App.3d Supp. at p. 34.)

The *Ambellas* court discussed the factors that may be considered in determining whether an officer reasonably complied with subdivision (g). (*Ambellas, supra,* 85 Cal.App.3d Supp. at pp. 34-36.) The court stated some of the factors are the following: distance to the nearest detoxification facility; availability of bed space at

5

detoxification facility; the arrestee's disposition and willingness to cooperate; and police department resources to transfer the arrestee to facility. (*Id*. at pp. 36-37.)

Finally, the *Ambellas* court addressed defendant's three violations of subdivision (f), two of which were before the court by way of a habeas corpus petition and one of which was before the court by way of an appeal. (*Ambellas, supra,* 85 Cal.App.3d Supp. at p. 28.) The court discharged the habeas corpus petition because there was evidence to support the conclusion defendant was difficult to control and thus civil commitment was inappropriate. (*Id*. at p. 40.) With respect to the appeal, the court reversed defendant's conviction because the prosecution failed to present evidence establishing the arresting officer was unable to comply with subdivision (g). (*Ambellas, supra,* 85 Cal.App.3d Supp. at pp. 40-43.)

In *Stout v. City of Porterville* (1983) 148 Cal.App.3d 937, 940 (*Stout*), a police officer stopped plaintiff and questioned him about his sobriety while walking on a major street at 1:30 a.m. After the officer allowed plaintiff to leave, plaintiff was subsequently struck by a vehicle and injured. Plaintiff sued the city, alleging the city and officer were liable for his injuries because the officer failed to arrest him or take him to a facility described in section 647, subdivision (g). The trial court sustained the city's demurrer without leave to amend. (*Stout, supra,* 148 Cal.App.3d at pp. 940-941.) The *Stout* court affirmed, noting case law had interpreted other statutes' use of "shall" as directory rather than mandatory and there was no "simple, mechanical test for determining" its meaning. (*Id*. at p. 947, fn. 5.) The court held subdivision (g), did not require the police to take a "public inebriate" into custody; instead, it simply gave officers the option to offer treatment to an arrestee, rather than to prosecute him. (*Id*. at pp. 946-947.) The court added though that if subdivision (g), created a mandatory duty of some kind, that duty was solely "to . . . make a reasonable decision concerning the appropriate disposition of a lawfully arrested drunk." (*Id*. at p. 947.)

Here, the Attorney General concedes "[a] strict application of *Ambellas* would suggest, as [Jorge] argues, that reversal of the public intoxication finding is warranted." However, the Attorney General cites to the following language from *Stout, supra,* 148 Cal.App.3d at pages 946-947, to argue we should affirm Jorge's conviction for count 1 because Perez acted reasonably in taking Jorge home: "Assuming the mandatory effect accorded to the statute by *Ambellas* places a duty on the arresting officer, as opposed to a condition precedent to a criminal prosecution [citation], the duty is to only make a *reasonable decision* concerning the appropriate disposition of a lawfully arrested drunk." (Italics added, fn. omitted.)

We agree with the Attorney General that *Ambellas* provides authority for reversing Jorge's conviction for count 1. Subdivision (g), contemplates it applies to both criminal prosecutions and juvenile court proceedings. (§ 647, subd. (g) ["A person who has been placed in civil protective custody shall not thereafter be subject to any criminal prosecution or juvenile court proceeding based on the facts giving rise to this placement"].) Like in *Ambellas, supra,* 85 Cal.App.3d Supp. at page 29, where there was "[n]o evidence . . . with respect to any efforts by the officer who arrested [defendant] to comply with subdivision ([g])[,]" here there was no evidence Perez made any efforts to comply with subdivision (g). Indeed, Perez testified he was unaware of the requirement. We find the *Ambellas* court's reasoning persuasive and adopt it here.

We disagree, however, with the Attorney General that *Stout* compels a contrary result. Although the *Stout* court questioned whether "shall" is mandatory or directory, the court, in the civil setting, acknowledged that to the extent an officer has a duty, it extends only to make a "reasonable decision concerning the appropriate disposition of a lawfully arrested drunk." For an officer to make a *reasonable decision* regarding the proper disposition of a person who is publicly intoxicated contemplates the arresting officer has knowledge of the available options, i.e., criminal prosecution, civil commitment (§ 647, subd. (g)), or release (§ 849, subd. (b)(2)). Here, at trial Perez

7

admitted he was unaware of section 647, subdivision (g). We cannot conclude the record includes evidence Perez made a reasonable decision when he was not fully aware of the available options.

We acknowledge there is a strong argument Jorge was better served by Perez taking him home rather than subjecting him to a 72-hour civil commitment. But as we explain above, the law requires a 72-hour commitment as an alternative to prosecution unless an officer determines it was unreasonable to place the adult or minor arrestee in a civil commitment. In addition to the factors articulated in *Ambellas*, an officer may also consider whether it better serves the minor to take the minor home and deliver him or her to the custody of a parent or legal guardian. In making this determination, an officer may consider the circumstances of the encounter, whether the minor has committed other offenses, the minor's intoxication level, the minor's criminal history, and any other encounters the officer may have had with the minor. An officer may also consider the parent's or legal guardian's receptiveness and ability to address the intoxication issue. Here, Perez did not make the required determination under subdivision (g). Because we conclude Perez's failure to comply with subdivision (g), was dispositive, we need not address Jorge's alternative claim insufficient evidence supported the conclusion he was unable to care for himself. Thus, we reverse Jorge's conviction for count 1.

*II. Section 308*

Jorge contends insufficient evidence supports his conviction for count 2 because a Bic lighter is not designed for smoking tobacco. We agree.

Section 308, subdivision (b), provides as follows: "Every person under the age of 18 years who purchases, receives, or possesses any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, or *any other instrument or paraphernalia that is designed for the smoking of tobacco*, products prepared from tobacco, or any controlled substance shall, upon conviction, be punished by a fine of seventy-five dollars ($75) or 30 hours of community service work." (Italics added.) Section 308's purpose

8

"is to prevent minors from smoking or otherwise using tobacco products." (*In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1273; *Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 587 [section 308's current purpose to protect minor's health.)

"We review de novo questions of statutory construction. [Citation.] . . . '"[O]ur fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'"' [Citation.]" (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)

Section 308 does not explicitly make it illegal for a minor to possess a lighter. Section 308 makes it a misdemeanor for a minor to possess tobacco, cigarettes, cigarette papers, other preparations of tobacco, products prepared from tobacco, and controlled substances. Thus, the issue before us is whether a lighter is included in section 308's definition "any other instrument or paraphernalia that is *designed for the smoking of tobacco*." (Italics added.) "Designed" is defined as "done, performed, or made with purpose and intent often despite an appearance of being accidental, spontaneous, or natural." (Webster's 3d New Internat. Dict. (1981) p. 612.) Section 308 thus makes it a misdemeanor for a minor to possess an instrument or paraphernalia the purpose or specific use of which is to smoke tobacco. An instrument's or paraphernalia's purpose or specific use which is to smoke tobacco contemplates the instrument or paraphernalia would hold the tobacco to be smoked. For example, by its plain language section 308 expressly prohibits a minor from possessing cigarette papers, an instrument or paraphernalia designed for holding tobacco.

Therefore, we conclude the Legislature intended with section 308 to prohibit minors from possessing instruments or paraphernalia used to hold tobacco to be smoked. It did not intend to prohibit minors from possessing lighters. Contrary to the Attorney General's claim otherwise, the fact "[c]igarette lighters are commonly used for lighting and smoking tobacco products" does not mean lighters were "designed for smoking tobacco." There are myriad uses for a lighter. That smoking is *one* of them does not compel the conclusion it was designed for that purpose.

9

If the California Legislature wished to prohibit minors from possessing lighters or matches, it is free to do so. (See Health & Saf. Code, § 14941 [defining cigarette lighter].) In 1991, the Legislature added Health and Safety Code section 14942. Subdivision (a) of that section charged the State Fire Marshal with adopting regulations specifying design standards for cigarette lighters that prevent children five and younger from operating lighters. (Health & Saf. Code, § 14942, subd. (a).) The Legislature is presumed to know the law. (*Mosser Companies v. San Francisco Rent Stabilization & Arbitration Bd.* (2015) 233 Cal.App.4th 505, 514.) We note the Legislature first enacted section 308 in 1891, and it has amended section 308 many times since then. Before 1988, section 308 prohibited the selling or furnishing of tobacco to minors. In 1988, the Legislature amended section 308 to prohibit minors from purchasing tobacco. Had the Legislature also wanted to prohibit minors from possessing lighters, we think it would have expressly done so.

## DISPOSITION

The order is reversed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.